CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED
MAR 17 2008
BY: JOHN F. CORCORAN, CLERK
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER AARON ROOP, for | ) | |
| LISA M. ROOP, deceased, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:07cv00214 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: Hon. Michael F. Urbanski |
|     Commissioner of Social Security. | ) | United States Magistrate Judge |
|     Defendant. | | |

## MEMORANDUM OPINION

Plaintiff Christopher Aaron Roop ("Plaintiff"), substitute party for Lisa M. Roop ("Roop"), deceased, brought this action pursuant to 42 U.S.C. § 1383(c)(3), incorporating 42 U.S.C. § 405(g), for review of the Commissioner of Social Security's ("Commissioner") final decision denying Roop's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). The case is now before the court on cross motions for summary judgment. On this appeal, Plaintiff argues that the Commissioner erred by: 1) not giving controlling weight to Roop's treating physician's opinion; 2) failing to follow Social Security Regulations regarding fibromyalgia; 3) posing an incomplete hypothetical question to the vocational expert; and 4) equating Roop's ability to perform limited activities of daily living and leisure activities with the ability to perform full-time work on a day-to-day basis. Having reviewed the record, and after briefing and oral argument, the court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision will be affirmed.

# I.

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The Commissioner employs a five-step process to evaluate DIB claims. 20 C.F.R. § 404.1520; see also Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The Commissioner considers, in order, whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and (5) if not, whether he or she can perform other work. Id. If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functioning capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local

2

and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Roop was born on November 26, 1962 and completed high school and three years of community college. (Administrative Record ("R.") at 26, 374) Prior to her alleged onset of disability, Roop worked as a production worker, security guard, sales clerk, and floral designer/assistant. (R. 103, 142) Roop filed an application for DIB[1] on July 29, 2004, claiming that she became disabled on May 15, 2002. (R. 61-66, 342-46) Her application was denied initially and upon reconsideration. (R. 31-42, 347-53) Roop then requested an administrative hearing. (R. 43)

An administrative hearing was held on March 14, 2006. (R. 362) Based on the testimony presented at this hearing, including that of a vocational expert ("VE"), and the medical evidence of record, the ALJ determined that Roop was not disabled within the meaning of the Act. (R. 17) Roop requested that the Appeals Council review the ALJ's decision (R. 16) and submitted additional medical evidence and a letter from her attorney with her request. (R. 354-58) After Roop's accidental death on September 9, 2006, Plaintiff substituted himself as a party in this action. (R.11-12, 359-61) The Appeals Council reviewed the new evidence and the ALJ's decision, but denied Plaintiff's request for review and adopted the ALJ's decision. (R. 7-10) Accordingly, the ALJ's decision became the final decision of the Commissioner. Plaintiff now appeals that decision to this court.

---

[1] Roop also filed an application for Supplemental Security Income (SSI) benefits under Title XVI of the Act. However, because unpaid SSI benefits are not payable to a decedent's estate, 20 C.F.R. §§ 404.503, 416.542(b)(4), the court will only consider Roop's claim for DIB benefits.

3

Plaintiff disputes the Commissioner's finding that Roop was not disabled and argues that the decision is neither supported by substantial evidence, nor rendered in accordance with applicable law. Specifically, he argues that the Commissioner erred by not giving controlling weight to Roop's treating physician's opinion, failing to follow Social Security Rulings regarding Roop's diagnosis of fibromyalgia, posing an incomplete hypothetical question to the VE, and improperly considering Roop's daily activities as part of the ALJ's credibility analysis.

The medical evidence of record indicates that in March of 1993, Roop underwent a lumbar diskectomy to remove a free fragment herniated disk after she slipped and fell at work. (R. 258-59) In August of 1995, Roop underwent a second surgery to treat a recurrent disk rupture. (R. 250-53) Roop returned to work following both surgeries, (R. 159, 165-73), and continued to work until May 15, 2002, when she alleges that she became disabled. Aside from an unsuccessful work attempt in October, 2002, Roop did not return to work.[2]

In May of 2002, approximately a week after her alleged onset of disability, Roop visited her physician at Dublin Family Practice with complaints of back pain and stress accompanied by sweatiness and shakiness. Her physician suspected that Roop's symptoms were mostly related to "incompletely controlled anxiety-depressive symptomalogy" and opined that Roop would benefit from counseling and long-term lifestyle changes such as increased exercise and smoking cessation. (R. 161)

On June 3, 2002, Roop met with Dr. James Lovelace for an initial visit. Roop complained of back pain and left leg pain and numbness, and stated that she was unable to straighten her back after bending over to pick up clothes. Upon examination, Dr. Lovelace found

---

[2] Roop attempted to work again on October 1, 2002, as a floral designer and deliverer, but found that she was physically unable to do the job and quit on November 14, 2002. (R. 74, 83-89)

that Roop's gait was normal, she had some paraspinal tenderness to the lower lumbar region, and that straight leg raise on the left caused leg and back pain. He diagnosed Roop with lumbar strain and left leg radiculopathy and planned for Roop to return after she had an MRI of the lumbar spine. (R. 247) This MRI was performed on June 12, 2002 and revealed "fairly extensive epidural fibrosis at L4-5 where there has been prior surgery," but "no evidence of recurrent disc at any level." (R. 305)

On July 2, 2002, Roop returned to Dublin Family Practice, complaining that her back pain had worsened as a result of having to sit a great deal during her real estate course.[3] She mentioned that she expected to sit for her real estate exam within the next seven to ten days and that her level of stress had increased. (R. 160) Office notes from August 16, 2002 indicate that Roop had reached a "therapeutic impasse" with Dublin Family Practice and that Roop would follow up with another physician. (R. 160)

Roop was seen by Dr. Lovelace on March 13, 2003, for complaints of pain and a catching sensation in her left knee. Upon examination, she had diffuse tenderness over the lower lumbar region, pain with left hip range of motion, leg pain upon straight leg raise in the left. Roop's left knee, however, revealed full range of motion and no definite joint effusion or instability. Dr. Lovelace diagnosed Roop with lumbar degenerative disc disease and epidural fibrosis. He opined that Roop's symptoms came from irritated nerves in her back, prescribed Lortab, and told Roop that when she has insurance she should consider epidural steroid injections.

Roop returned to Dr. Lovelace's office on July 11, 2003 with complaints of chronic low back pain and recent pain in her left wrist area. After examination, Dr. Lovelace opined that

---

[3] The record indicates that Roop began a real estate course as early as May 13, 2002. (R. 165)

5

Case 7:07-cv-00214-mfu   Document 19   Filed 03/17/08   Page 5 of 18   Pageid#: 77

Roop had chronic low back pain, lumbar epidural fibrosis, a possible meniscal tear in the left knee, and a left wrist ganglion cyst. Roop was not financially able to do any further evaluation in her knee and did not want to consider surgery for her ganglion cyst. Dr. Lovelace continued her present pain medication with emphasis on minimizing medication and trying to maintain her functional level. (R. 179)

On March 9, 2004, Roop met with rheumatologist, Dr. Androniki Bili, for an evaluation. Upon examination, Dr. Bili found tenderness to palpitation of the left wrist and right knee and found that fourteen of eighteen fibromyalgia tender points were positive. Dr. Bili performed left knee aspiration and injection. He diagnosed Roop with possible inflammatory polyarthritis of the left wrist and knee, fibromyalgia, and depression. (R. 207) Dr. Bili ordered an x-ray of Roop's knee, which revealed small suprapatellar effusion and mild degenerative joint disease (R. 209)

Roop returned to Dr. Lovelace's office on March 11, 2004. Upon examination, Roop had diffuse paraspinal tenderness over the lower lumbar region and pain in her left leg and back upon straight leg raise. Roop had full range of motion and no effusion in her left knee, and normal muscle strength and tone in her lower extremities. Dr. Lovelace noted that he would like Roop to try Ultracet samples and minimize her use of narcotic pain medication. (R. 178)

On April 6, 2004, Roop returned to Dr. Bili's office for a follow-up visit. Roop noted that her left knee pain improved for approximately two weeks after receiving injections during the previous visit, although the pain had returned and caused difficulty walking. Roop also noted that she had no pain in her left wrist. Dr. Bili suspected that Roop had fibromyalgia, and that her left knee pain was likely due to osteoarthritis. He repeated the injection of the left knee and

6

noted that if Roop's disability claim was approved and she received insurance, he would obtain an MRI of her left knee. (R. 200)

Roop returned to Dr. Bili on August 24, October 7, and November 18, 2004. (R. 292-295) She presented to these visits complaining of severe and constant pain in her knees that became worse when walking, as well as wrist pain that became worse with movement. Dr. Bili referred Roop to a pain specialist for better management of her chronic pain, but Roop was unable to see the specialist due to lack of medical insurance. (R. 294-95, 198) At the November visit, Roop stated that she lost her brother in October to cancer, broke up with her fiancé, and was depressed. (R. 292) Billi diagnosed Roop with fibromyalgia and chronic pain, depression due to both her chronic pain and her brother's terminal illness and death, and bilateral knee osteoarthritis. (R. 292-95)

On January 1, 2005, Roop visited a Belinda Overstreet, Ph.D., for a mental status examination and clinical interview. Overstreet found that Roop had a Global Assessment of Functioning score of 59 and diagnosed Roop with depressive disorder secondary to chronic pain and with generalized anxiety disorder. (R. 216) Overstreet opined that Roop's prognosis was fair to guarded, as her psychological symptoms were likely to persist as long as she experienced chronic pain and was unable to afford mental health treatment. Overstreet also found that Roop was able to understand, recall, and carry out simple instructions as well as complex instructions, and could make work decisions, understand work rules, and function independently. Overstreet concluded that Roop's ability to work cooperatively with coworkers and work with the public was impaired by her withdrawal from others. And although Overstreet found that Roop may experience mild concentration difficulties, she concluded that with repetition and/or written reminders, Roop was likely to overcome these difficulties. Finally, Overstreet opined that

7

Roop's psychological symptoms were likely to result in only occasional work absences or tardiness. (R. 217)

Roop met with Dr. Bili for follow-up visits on January 18 and April 19, 2005. In January, Dr. Bili noted that Roop was handling her brother's death better. In April, Roop continued to complain of severe pain in both knees and her left wrist, and also complained of pain in her right shoulder. Dr. Bili assessed Roop with having severe left knee osteoarthritis, fibromyalgia, possible carpal tunnel syndrome, and depression. (R. 290)

An MRI of Roop's Spine was performed on June 28, 2005. The MRI revealed diffuse disk osteophyte bulge complexes at L3-4 and L4-5 with facet arthropathy resulting in moderate central canal stenosis at L3-4. (R. 243) On September 14, 2005, Roop had a nerve conduction study performed by Dr. Rollin Hawley. Although Dr. Hawley found some evidence of "a little residual left L5 radiculopathy" during a pinprick test, he found no evidence of it on electrophysiologic study, and reported that the study was "essentially normal." (R. 261) Dr. Hawley asked Roop to continue to follow conservative treatment of her lower back, which included strengthening and straightening exercises. He also encouraged her to continue losing weight. (R. 261)

On November 18, 2005, Roop had an MRI of her left knee. The MRI revealed a tear of the lateral meniscus with some displacement of part of the meniscus posteriorly. There was also subchondral irregularity of the lateral tibial plateau and lateral femoral condyle compatible with subchondral injury and associated edema and subchondral cysts. Finally, the MRI showed degenerative osteoarthritic changes at the knee joint and patellofemoral joint. (R. 270)

Roop had an x-ray of her left wrist on December 10, 2005. The x-ray revealed slight subluxation of the lunate bone posteriorly with a few cystic changes, all of which could be

8

secondary to scaphoid ligament injury. (R. 337) The next day, Roop fell on ice onto her left knee, injuring it. (R. 271-76) An x-ray revealed degenerative changes at the knee joint with joint effusion. (R. 314) Roop returned to the hospital on January 12, 2006, because the pain in her left knee reached a level where she couldn't stand on her left leg. (R. 278) An x-ray performed during this visit did not reveal fracture, dislocation, or soft tissue abnormality, but did show degenerative changes most pronounced at the patellofemoral joint space. (R. 315) Roop returned to Dr. Bili's office on January 19, 2006, complaining of constant pain in her left knee, lateral aspect of the left wrist, upper arms, shoulders, neck, and low back. Dr. Bili noted that Roop would look at community assistance programs that would possibly allow her to have arthroscopic surgery for her left knee. (R. 288)

On February 8, 2006, Dr. Lovelace completed an assessment of Roop's physical ability to do work-related activities. He indicated that Roop could sit for about four hours and stand/walk for about two hours in an eight-hour work day, frequently lift less than ten pounds, and occasionally lift up to twenty pounds. He also stated that the severity of Roop's pain or other symptoms would often interfere with her attention and concentration, that her symptoms were likely to produce "good days" and "bad days," and that her impairments or treatment would likely cause her to miss about two days of work a month. (R. 249) On June 5, 2006, Dr. Lovelace clarified that when he indicated that Roop could stand/walk for about two hours in an eight-hour day, he intended to state that she could only stand and walk in combination about two hours in an eight-hour day. (R. 358)

State Agency psychologists, E. Hugh Tenison, Ph.D. and Julie Jennings, Ph.D., reviewed Roop's medical records and completed Psychiatric Review Techniques on September 24, 2004, and February 24, 2005, respectively. Tenison found that Roop had depressive syndrome that was

9

not severe, and that would not restrict her daily activities, cause difficulty maintaining social functioning, cause repeated episodes of decompensation, or cause more than mild difficulties in maintaining concentration, persistence, or pace. (R. 181-193) Jennings found that Roop had depressive disorder, NOS, and anxiety disorder, NOS. As did Tenison, Jennings concluded that Roop's mental impairments would not restrict her activities of daily living, would not cause repeated episodes of decompensation, and would only cause mild difficulties in maintaining concentration, persistence, or pace. Jennings also concluded that Roop's impairments would cause mild difficulties in maintaining social functioning. (R. 218-230)

Jennings also completed a Mental Residual Functional Capacity Assessment on February 24, 2005, in which she concluded that Roop would have moderate limitations in understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule and maintaining regular attendance and punctuality within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms; interacting appropriately with the general public; and setting realistic goals or making plans independently of others. (R. 238-40)

Finally, State Agency physician, Richard M. Surrusco, M.D., completed a physical RFC Assessment on February 24, 2005. After reviewing Roop's medical history, the character of her symptoms, the type of treatment she had received, and her daily activities, Dr. Surrusco concluded that Roop retained the RFC to perform light work[4] with limited pushing and/or pulling

---

[4] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job is considered light work when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing

in her lower extremities, no climbing of ladders, ropes, or scaffolds, and no exposure to extreme temperatures (R. 231-33)

Based on the medical evidence of record, the ALJ determined that Roop was not disabled within the meaning of the Act. (R. 30) At step one of the disability evaluation process, the ALJ found that Roop had not engaged in substantial gainful activity since her alleged onset date.[5] (R. 21) At steps two and three, the ALJ found that Roop's lumbar disc disease, fibromyalgia, torn meniscus of the left knee, obesity, and depression were severe impairments, although not severe enough to meet the listing requirements in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22-26) Before proceeding to step four, the ALJ found that Roop retained the RFC to

> lift and/or carry up to 10 pounds, stand and/or walk about two hours total in an 8-hour workday, and sit about six hours total in an 8-hour workday with a sit/stand opportunity for brief stretch breaks throughout the day. She should never climb ladder/rope/scaffolds, but can occasionally climb ramp and stairs, balance, stoop, kneel, crouch, and crawl. She needs to work in a clean environment relatively free of excessive dust and fumes. Due to the impact of depression, medications, and pain she would have moderate reduction in concentration defined as limiting her to simple non-complex tasks.

(R. 26) The ALJ found that this RFC was supported by the objective findings, the limited degree of treatment Roop received, her nearly normal level of activities, and the opinions of the examining psychologist. (R. 28) At step four of the analysis, the ALJ determined that Roop is unable to perform any past relevant work, and at step five, the ALJ considered Roop's age, education, work experience, and RFC to conclude that there are jobs that exist in significant numbers in the national economy that Roop can perform. (R. 29)

---

or pulling of arm or leg controls. 20 C.F.R. § 416.967(b).

[5] The ALJ found that Roop's employment as a floral designer/deliverer was an unsuccessful work attempt. (R. 21)

11

## III.

Plaintiff's first argument is that the ALJ erred by failing to resolve conflicts and ambiguities in the record. Specifically, Plaintiff argues that the ALJ should have re-contacted Dr. Lovelace to resolve the ambiguity created by his opinion that Roop could stand/walk about two hours in an eight-hour day. The ALJ found that Dr. Lovelace's opinion was "unclear as to whether he intended to imply in the check off sheet . . . that claimant could work 6 hours total, meaning 4 hours sitting and 2 hours standing ans walking; or 8-hours total, meaning 4 hours sitting, 2 hours standing and 2 hours walking." (R. 28) In view of the minimal findings documented in Dr. Lovelace's office notes from his visit with Roop preceding the completion of the questionnaire, as well as the incompleteness of the RFC form prepared by Dr. Lovelace and the VE's testimony, the ALJ gave very little weight to Dr. Lovelace's opinion as it would require him "to make assumptions as to the conclusions that Dr. Lovelace intended to express." (R. 28)

Plaintiff argues that the Social Security regulations require the ALJ to seek clarification from the treating source. These regulations, however, provide that an ALJ must re-contact the source only when the medical evidence of record is inadequate to make a disability determination, 20 C.F.R. § 404.1512(e), the source provides an opinion on an issue reserved to the Commissioner, SSR 96-5P, or the source's treatment notes are incomplete, SSR 85-16. None of these situations apply in this case. Dr. Lovelace did not provide an opinion on an issue reserved to the Commissioner, his treatment notes were not incomplete, and the medical evidence of record, aside from Dr. Lovelace's ambiguous assessment, was sufficient to allow the ALJ to make a disability determination.

Moreover, in her request to the Appeals Council for review of ALJ's decision, Roop submitted a statement from Dr. Lovelace in which he clarified that he intended his assessment to

12

mean that Roop could only work six hours in an eight-hour day. The Appeals Council reviewed and considered this newly submitted evidence in declining Roop's request for review. Thus, the proper question for this court is whether the record as a whole, including Dr. Lovelace's clarifying statement, provides substantial evidence to support the ALJ's decision. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953, F.2d 93, 96 (4th Cir. 1991). The court must remand this case to the Commissioner to weigh and resolve Dr. Lovelace's clarifying statement only if it is "'contradictory,' presents 'material competing testimony,' or 'calls into doubt any decision grounded in the prior medical reports.'" Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005). Reviewing the record as a whole, it is clear that ALJ's decision to discredit Dr. Lovelace's statement is supported by substantial evidence and that a remand is unnecessary.

Under the regulations, the ALJ need not give controlling weight to a treating source's opinion where the opinion is not supported by medical signs and laboratory findings and is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(d)(3), (4); SSR 96-2p. In this case, Dr. Lovelace's opinion that Roop could work only stand and walk in combination for two hours in an eight-hour day is not supported by the objective medical evidence and is inconsistent with the record as a whole. As the ALJ noted, an MRI of Roop's lumbar spine performed in June, 2002 revealed some epidural fibrosis at L4-5 but no evidence of recurrent disc herniation; an MRI of the lumbar spine in June, 2005 showed diffuse disc osteophyte bulge complexes at L3-4 and L4-5 with facet arthropathy resulting in moderate central canal stenosis; a nerve conduction study performed in September, 2005 was "essentially normal"; and an MRI of the left lower extremity performed in November, 2005 revealed a tear in the lateral meniscus,[6] as well as

---

[6] In her opinion, the ALJ noted that a torn meniscus of the left knee would be correctable within 12 months of surgery. (R. 25)

degenerative osteoarthritic changes at the knee joint and patellofemoral joint. Roop received conservative treatment from Dr. Lovelace, through the use of minimal narcotics and strengthening exercises. The ALJ thus noted correctly that the minimal findings documented in Dr. Lovelace's treatment notes warranted giving less weight to Dr. Lovelace's opinion.

Not one of Roop's treating physicians recommended surgery to treat her pain until January 2006, when Dr. Bili recommended arthroscopic surgery for her left knee after Roop fell on ice and her pain was exacerbated. Furthermore, the degree of pain and functional limitation alleged by Roop was called into question by the ALJ's observation that Roop did not have either crutches or a cane at the administrative hearing, nor did she mention wearing the prescribed knee immobilizer. Thus, substantial evidence supports the Commissioner's decision not to credit Dr. Lovelace's clarifying statement and remand is not required on this ground.

## IV.

Plaintiff's next argument is that the Commissioner erred by failing to follow the Social Security regulations discussing the analysis of fibromyalgia diagnoses. For the following reason, however, the court finds that this argument has no merit.

Roop was diagnosed with fibromyalgia by Dr. Bili in March, 2004, after he found that Roop had fourteen positive fibromyalgia tender points. Plaintiff contends that the ALJ erred by failing to follow Social Security Regulation 99-2p, Evaluating Cases Involving Chronic Fatigue Syndrome, in assessing the severity of Roop's fibromyalgia. This argument is flawed for two reasons. First, SSR 99-2p provides direction on evaluating claims for disability on the basis of Chronic Fatigue Syndrome (CFS). Although this regulation discusses an overlap between the symptoms of CFS and fibromyalgia in a footnote, the regulation itself pertains to CFS, not fibromyalgia, and Roop was not diagnosed with CFS. Next, SSR 99-2p provides that the ALJ

must consider a claimant's alleged symptoms in deciding whether the individual's impairment is "severe." The ALJ, however, found Roop's fibromyalgia to be a severe impairment and fully accommodated that impairment in her RFC assessment.

Plaintiff also argues that the ALJ assessed Roop's credibility using an incorrect legal standard. Plaintiff contends that the ALJ discredited Roop's allegations of pain and fatigue simply because their severity was not confirmed by objective evidence, and argues that there need not be objective evidence of the pain itself or of its intensity. The ALJ, however, found Roop "not entirely credible" based on the entire case record, including not only the extent to which Roop's symptoms were consistent with the objective medical evidence and other evidence, but also opinion evidence from Roop's treating sources and Roop's activities of daily living, consistent with SSR 96-7p. Accordingly, the ALJ applied the correct standard to assess Roop's credibility.

## V.

Plaintiff next argues that the Commissioner erred because the ALJ failed to pose a complete hypothetical question to the VE when the ALJ failed to include specific limitations to non-stressful work, a part time schedule, limited use of the left hand, and inability to keep the pace of a job in the hypothetical question presented to the VE.

Roop was found capable of simple, unskilled, non-stressful work in a Mental Residual Functional Capacity Assessment completed by a state agency psychologist. Consistent with this assessment, the hypothetical question posed by the ALJ to the VE accommodated Roop's limited ability to handle stress by including a limitation to "simple, non-complex tasks." (R. 408) Moreover, during cross-examination, Plaintiff's attorney specifically asked VE about the level of stress involved in the jobs of sedentary assembly and knitting topper, the jobs he identified based

15

upon the ALJ's hypothetical question. The VE stated that, although these positions are both production-type jobs, they do not require production quotas and so the stress involved would be "good" stress which comes from working at a normal pace. (R. 413)

Plaintiff also contends that, per Dr. Lovelace's opinion, Roop was limited to standing, walking, and sitting a total of six hours a day, and that the VE was unable to identify any jobs that could accommodate such a part-time schedule. For the reasons stated above, however, the Commissioner properly discounted Dr. Lovelace's opinion that Roop could work only six hours in an eight-hour workday. Next, Plaintiff argues that the ALJ failed to accommodate Roop's limited ability to use her left, non-dominant hand, although the ALJ recognized this limitation in the narrative portion of her opinion. The ALJ's mention of Roop's limited ability to use her left hand, however, refers to a statement contained within a state-agency completed physical RFC assessment that the ALJ ultimately found not fully supported. (R. 28) The ALJ did not find Roop's left hand impairment severe at step two of the sequential evaluation process and therefore, properly did not include such a limitation in the question presented to the VE.

Finally, Plaintiff notes that the consultative psychologist found that Roop would be unable to keep up the pace of a job, a limitation that the VE stated would not be tolerated in any type of job. The consultative psychologist, however, found that Roop may experience only mild concentration difficulties which might mildly impact her ability to understand and recall complex instructions. Furthermore, the psychologist stated that with repetition and/or written reminders, Roop was likely to overcome those difficulties. Accordingly, the ALJ appropriately did not include such limitation in her hypothetical question.

## VI.

Plaintiff's final argument is that the ALJ applied an improper legal standard by equating Roop's ability to limited activities of daily living and/or leisure activities with the ability to perform full-time work on a day-to-day sustained basis. The ALJ, however, properly considered Roop's daily activities, in addition to the medical and opinion evidence of record, in order to determine the extent to which Roop's symptoms limited her capacity for work, pursuant to 20 C.F.R. § 404.1529(c)(3)(I). Thus, Plaintiff's final argument has no merit.

## VII.

Considering the evidence in the administrative record as a whole, the court finds that the Commissioner's decision meets the substantial evidence standard. Again, it is not the province of the court to make disability determinations or to re-weigh the evidence in this case; rather, the court's role is to decide whether the Commissioner's decision is supported by substantial evidence. It is clear to the court that the accumulated medical evidence in the record supports the ALJ's findings. This court finds that the ALJ's decision was founded on substantial evidence.

In affirming the final decision of the Commissioner, the court does not suggest that Roop remains free from pain and subjective discomfort. On the contrary, the record indicates that Roop suffers from a variety of bothersome ailments. However, the objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears to this court that the ALJ properly considered all of the objective and subjective evidence in adjudicating Roop's claims for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

The Clerk of Court is hereby directed to send copies of this Opinion and accompanying Order to all counsel of record.

**ENTER:** This 17th day of March, 2008.

Michael F. Urbanski
United States Magistrate Judge